J-S38001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.W.J., II | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| A.S.P. | No. 55 MDA 2015 |

Appeal from the Order Entered on December 29, 2014
In the Court of Common Pleas of Susquehanna County
Civil Division at No.: 2008-14 C.P.

BEFORE:  WECHT, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY WECHT, J.:                    **FILED JULY 14, 2015**

A.S.P. ("Mother") appeals the December 29, 2014 order that granted primary custody of the parties' three minor children to J.W.J., II ("Father"). We affirm.

Mother and Father married in July 2001.  They have three minor sons: J.J.J., born in December 2000; T.M.J., born in March 2003; and L.W.J., born in July 2005.  On January 7, 2008, Father filed a complaint in divorce.  On May 29, 2008, the parties entered a stipulated custody order in which Father had primary physical custody and Mother had partial physical custody.  At that time, the parties anticipated that Mother was going to move to Utah. On June 2, 2009, Father filed a petition for special relief seeking to suspend Mother's partial custody because she had not complied with certain conditions that were part of the stipulated order, such as providing Father with her current address in Utah and photographs of her residence in Utah.

Mother did not appear at the hearing on Father's petition, and, on July 7, 2009, the trial court entered an order suspending Mother's partial custody and providing Mother with supervised visitation. On February 28, 2012, the trial court issued a divorce decree.

On February 25, 2014, Mother filed a petition for special relief in which she alleged that Father, who had primary custody, was neglecting the children. Mother sought a modification of custody and immediate temporary custody of the children pending a hearing. On the same date, Mother filed a petition for relocation.

On February 25, 2014, the trial court granted Mother's petition for special relief on the condition that the children be placed with B.P. ("Maternal Grandmother").[1] Maternal Grandmother lived close to Father's house; Mother continued to live in Utah.

The trial court held hearings on the matter on April 21, 2014; July 14, 2014; September 12, 2014; and December 12, 2014. The court took testimony from both parents; all four grandparents; the children's step-brother and his mother; J.J.J. and T.M.J.; Mother's fiancé; Mother's expert

---

[1] On March 3, 2014, Father filed a petition to vacate the February 25, 2014 order. He alleged that he had not received notice of the petitions. Further, Father's counsel alleged that he was in court on February 25, but that Mother's counsel did not inform him of her intent to present the petitions and waited for Father's counsel to leave the courtroom before presenting the petitions to the court. Mother's counsel denied these allegations. The trial court denied Father's motion.

witness Vincent Carolan; Nichole Welmon, a home study investigator; and a parent who participates in scouting with the children. Following those hearings, the trial court made the following findings of fact:

> For about seven (7) years Father has been the primary caregiver of the three sons as Mother had removed herself from the family home . . . first to Honesdale, Pa. for a short period and then to the area of Layton, Utah. She has had no physical contact with the boys until early 2014. However, she has maintained some measure of telephone communications with the boys, substantially more in the past couple of years than before.
>
> [Mother] would have us find credible that she could not afford to either move back to the Susquehanna County area and/or she had no financial means to return for partial custody and visitation with the boys in Susquehanna County. Moreover, on a support order that began as six hundred dollars ($600) per month child support, later modified to five hundred dollars ($500) per month child support, she is in arrears in an amount in excess of nineteen thousand dollars ($19,000).
>
> She now works for her paramour about twenty hours per week as a bookkeeper/dispatcher for his owner-operator trucking business. As such she is solely dependent on him for employment and generally for food and shelter.
>
> Mother has told the children of wonderful things about the area of Utah in which she resides such as skiing opportunities and other recreational pursuits.
>
> [The trial court] interviewed the sons and find their preferences as to whom to live with to be not compelling.
>
> [The trial court] also note[d] that a home study of each household has been conducted . . . .
>
> Father, by order of 2009, has been the sole legal custodian of the children as well as the primary [physical] custodian of the children. Largely by his efforts and that of the maternal grandmother who lives next [door] to the boys, their needs have been met.

Father as a cub scout and boy scout leader has had all three sons in a scouting program, although [J.J.J.] does not attend now pursuant to his wishes which Father has honored.

Although Father's mother lived with him for a couple of years and a girlfriend, Kelley[,] lived with him for several months, Father generally lived alone with the three sons until the court allowed for a change of physical custody of the boys to the maternal grandmother's home next door. At the time of the transfer[,] Father was neither allowed to communicate with the boys nor see them for a couple of months which resulted in his filing of petitions and the court restoring those parental rights to him.

Noteworthy is the fact that upon the temporary transfer of physical custody[,] Mother took two weeks to return to the area to be with the boys and now goes back and forth to Utah on a regular basis to address her employment duties with her [fiancé].

A complaint of [] Mother was the fact that the boys had to do some household chores such as laundry, cleaning, dishes, making their own breakfast, etcetera. [The trial court] determined that the amount of chores was not onerous to any of the children, but on the contrary[,] was instilling in them life skills and good work habits.

[T.M.J.] had some mental health and emotional problems which [Father] addressed through ongoing mental health counseling. [T.M.J.] has progressed and no longer has emotional difficulties to the degree he once experienced.

For some time the older son, [J.J.J.], had to watch the two younger sons because of [Father's] work schedule. This sometimes proved quite challenging for [J.J.J.] and he voiced that concern to [Father]. This overseeing could not have occurred for too long because either the paternal grandmother and/or Kelley resided within Father's household.[2]

---

[2] The record reflects that, after Mother moved, the maternal grandmother assisted with the children when Father was at work. In September 2011, due to a flood, the paternal grandmother moved in with Father and also assisted with the children until she moved out in May 2013. *(Footnote Continued Next Page)*

- 4 -

To lessen the child caring duties of [J.J.J.] for substantial periods of time Father has offered to the court that his mother and father who both live within about half an hour away could help him with the boys. The court firmly believed this extra adult help would be a better practice than having [J.J.J.] watch the two younger sons.

Generally Father or Father and/or maternal grandmother have seen to it that the children have attended health[-]related appointments.

Father has been the parent to attend the children's Individual Educational Program (IEP) meetings as well as parent teacher conferences and other school functions.

. . . [O]f all the family members on both sides only Mother lives in Utah. The balance of the families on both sides live in the vicinity of Susquehanna County.

*    *    *

[Mother] over the past approximately seven years has had no physical contact with the children and only a normal amount of telephone contact with them until February – March 2014 when they physically began living at grandmother[']s. Before then Father had daily care of the children coupled with maternal grandmother's assistance in his work[-]related absences. [The trial court] note[d] however he always returned to the home at late afternoon or early evening dependent on his work schedule. He engaged the boys in scouting and other activities and attended school related functions.

The boys have an adult step[-]brother, [Father's son,] in the area who has an excellent relationship with them, and is often in their presence.

*(Footnote Continued)* ───────────────────

In 2013, Father and the maternal grandmother had a falling out and she no longer watched the children while Father worked. Father's girlfriend, Kelley, moved into Father's house and assisted with the children for about a year before she moved out in December 2013. Therefore, the only time J.J.J. would have had to supervise the younger children was between Kelley leaving the home in December 2013 and when custody was transferred to Mother and the maternal grandmother in February 2014.

The children range in age from nine to fourteen, and relocation would have the effect of uprooting them from their father, step[-]brother, grandparents and other family members on both sides. They would have to leave their school and all of their school friends.

Given the parents live 2000 miles apart the boy[s'] relationship with their primary caregiver, Father, would change drastically, and could not be meaningfully preserved.

The boys expressed their preferences as to where to live in accordance with promises made by [Mother] which [the trial court] glean[ed] from her and the home study investigator, Ms. Nichole Welmon.

We do not find it credible that Father obstructed Mother's . . . relationship with the boys. Basically, she abandoned the children by moving nearly 2100 miles away, never coming back East to see them. She never filed any petition with this court seeking partial custody of these children or enforcement thereof.

The financial situation of Mother and therefore of the subject children is tenuous at best. She is dependent upon her paramour, not only for a roof over hear head, food on her table, but also for her part[-]time employment. If that relationship would end she would generally be destitute.

Father, on the other hand, has been a member of the Heat and Frost Insulators and Asbestos Workers Union Local #38 for several years. Occasionally, he draws unemployment compensation but generally supports the children despite [Mother] being in arrears on her child support obligation for thirty[-]six plus months.

We do not discern any credible evidence that abuse has occurred in the households of [either] parents.

We find the emotional benefit to the children is greater if they remain in the area with their father, extended family including grandparents and their step[-]brother. We find it . . . very iffy as to granting relocation removing them from all the community they really have known.

We find that both parties are likely to encourage and permit frequent and continuing contact with the children. In that regard

> [Mother] can easily put aside her part-time employment and return to Susquehanna County to visit the children.
>
> The [children's] stability is well[-]established in Susquehanna County by their being here exclusively with their father for several years, as well as being with grandparents and attending school here.
>
> Both Father and Mother have a loving relationship with the [children]. However[,] Father has provided for their care nearly exclusively for several years. He is not to a discernable degree dependent [] on another to provide financially for the [children].

Trial Court Opinion and Order ("T.C.O."), 12/29/2014, at 1-5 (unnumbered).

On December 29, 2014, the trial court issued its order and opinion, which granted Father primary physical custody and granted Mother partial physical custody. On January 6, 2015, Mother filed a notice of appeal. Mother did not designate the appeal as a Children's Fast Track Appeal. Nor did Mother file a concise statement of errors complained of on appeal contemporaneously with her notice of appeal, as is required by Pa.R.A.P. 1925(a)(2)(i). However, we may excuse the failure to file a concise statement at the same time as the notice of appeal. *See In re K.T.E.L.*, 983 A.2d 745 (Pa. Super. 2009).

On March 2, 2015, this Court issued an order designating the case as a Children's Fast Track case and ordering Mother to file a concise statement with the trial court and with this Court, and to serve the concise statement on the trial judge and Father by March 12, 2015. The order also warned that failure to comply with the order would result in waiver. Mother filed a concise statement with the trial court on March 12, 2015, and with this

Court on March 17, 2015.[3]   The trial court did not file a Pa.R.A.P. 1925(a)

opinion, instead relying upon the opinion filed with its December 29 order.

Mother raises the following issue for our review: "[W]hether or not the

lower court erred by abusing its discretion in awarding custody of the subject

[children] to [Father] as the lower court's ruling was contrary to the weight

and sufficiency of the evidence and did not adequately consider[] the sixteen

(16) best interest factors set forth in 23 Pa.C.S.A. § 5328(a)[?]"  Mother's

Brief at 3.

Father argues that Mother has waived her right to review by failing to

comply with various Rules of Appellate Procedure.  Specifically, Father points

out Mother's failure to file a concise statement with her notice of appeal, her

failure to address the concise statement issue in her brief, and her failure to

identify the case as a Fast Track case.  Father also cites her failure to follow

rules related to filing a reproduced record and failure to cite to the

reproduced record in her brief.  Father's Brief at 9-11.

_____

[3]    Mother filed her concise statement after the trial court transmitted its certified record to this Court and the copy that Mother filed with this Court did not contain a certificate of service.  Because failure to comply with our order with regard to service upon the trial court would have resulted in waiver, *see Mudge v. Mudge*, 6 A.3d 1031, 1032 (Pa. Super. 2010), we had to seek a supplemental certified record to ensure that Mother had complied and we could reach the merits of her issues on appeal.  This, in addition to Mother's failure to designate this as a Fast Track case, has caused a delay in the resolution of this case.  We advise Mother's counsel to ensure compliance with the Rules of Appellate Procedure in future appeals.

We agree with Father that Mother did not comply with all the Rules of Appellate Procedure. Mother's lack of compliance certainly delayed the review of this case. However, we consistently have held that, when the failure to comply does not impede our ability to review the issues, we will address the merits. **See Phillips v. Selig**, 959 A.2d 420, 428 (Pa. Super. 2008). Here, our review, while delayed, has not been impeded substantially by Mother's missteps.

Although Mother presents one question on appeal, she actually raises two issues: failure to consider all of the statutory factors and failure to weigh those factors appropriately. We first must address the allegation that the trial court failed to consider all of the factors, an issue that Mother preserved in her concise statement. **See** Statement of Errors Complained of on Appeal, 3/12/2015, at ¶ 4.

In awarding custody, the trial court must consider the following factors in determining the children's best interests:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

We have held that the failure to consider all of the factors is reversible error. ***J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011). "[T]here is no

required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 336 (Pa. Super. 2013). Notably, in that case, the trial court did discuss each factor. We also have stated that "a court cannot merely recite the § 5328(a) factors and state it considered them generally." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 407 (Pa. Super. 2014).

Here, the trial court made various findings of fact, in no particular order, that correlate to most, but not all, of the factors. ***See*** T.C.O. at 1-5. Then, the trial court stated that it "considered those factors [the trial court] believe[d] relevant at 23 Pa.C.S.A. § 5328." ***Id.*** at 6.

Specifically, the trial court's opinion offers no findings related to subsection 5328(a)(14) ("[t]he history of drug or alcohol abuse of a party or member of a party's household") or (15) ("[t]he mental and physical condition of a party or member of a party's household"). We previously have remanded when a trial court failed to consider these same two factors. ***See A.M.S. v. M.R.C.***, 70 A.3d 830, 836 (Pa. Super. 2013). However, in ***A.M.S.***, instead of merely remanding the case for further fact-finding, we explicitly remanded the case for further proceedings to give the trial court the opportunity to develop a record pertaining to the history of drug or alcohol abuse and the mental and physical condition of the members of the mother's household. ***Id.*** The instructions upon remand indicated that the evidence simply did not exist in the record.

Here, however, there was ample evidence for the trial court to consider. Mother testified that she had a prior conviction for possession of drug paraphernalia, but had no drug or alcohol problems. Notes of Testimony ("N.T."), 7/14/2014, at 83-84. Mother's expert, Vincent L. Carolan, testified that, during his evaluation process, he became aware of instances in which Father was intoxicated.[4] N.T., 9/12/2014, at 54. Father admitted to having an occasional drink, but stated that his employment is subject to drug and alcohol testing.[5] N.T., 12/12/2014, at 76-77.

Mother testified that she had no mental or physical conditions that would interfere with exercising custody. N.T., 7/14/2014, at 85. Mother's fiancé testified that he smoked, but had no mental or physical conditions that would prevent him from caring for the children. N.T., 9/12/2014, at 22, 24. Mr. Carolan testified that his evaluation uncovered no mental health issues for the parties, Mother's fiancé, or the children's grandparents. *Id.* at 51, 53, 54-55.

---

[4] Although Mr. Carolan did not explain this comment in his testimony, his report, which was admitted into evidence, states that Father admitted to two occasions in which he was intoxicated. Exh. P-8 at 4. However, Mr. Carolan concluded that Father's "screening and clinical evaluation scores do not reveal an issue with alcohol or other drugs that impairs [Father's] ability to work, function or parent his three boys." *Id.*

[5] Mother alleged that Father had a problem with alcohol. Mother's Brief at 16. However, Mother does not cite any support for her contention that Father had an alcohol problem. Other than Father's admission to an occasional drink and Mr. Carolan's reference to Father's intoxication, we find no support in the record to suggest a problem with alcohol.

This testimony distinguishes this case from *A.M.S.* There was a factual record before the trial court here from which that court could have considered subsections (14) and (15). Indeed, here, the trial court easily could have concluded that there were no issues related to section 5328(a)(14) or (15) that were relevant to the custody decision. Thus, *A.M.S.* is distinguishable, and does not mandate reversal. It cannot be gainsaid that the trial court should have stated in its opinion that it made such a finding. Nonetheless, because the evidence of record was clear, because the trial court stated it considered all the factors, and because a remand would further delay finality for these children, we find that the outcome could not have changed had the trial court made specific findings, and that a remand would serve no legitimate purpose.

Mother's remaining argument is that the trial court misweighed the evidence. Mother complains that the trial court did not credit her testimony, did not find that Father neglected the children, did not determine that Utah would be better for the children, did not credit her expert's testimony that the children should be permitted to move to Utah, and failed to consider the children's preferences. Mother's Brief at 11-25.

In an appeal of a child custody order, we review the trial court's decision for an abuse of discretion. *D.K. v. S.P.K.*, 102 A.3d 467, 478 (Pa. Super. 2014). When the trial court's findings are supported by competent evidence of record, we are bound to accept those findings. *Id.* Further, we must defer to the trial court with regard to credibility and weight of the

- 13 -

evidence. *Id.* "Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." *Id.*

Here, Mother essentially asks us to reweigh the evidence and find that the testimony and evidence that she presented was more credible than that presented by Father. That is exactly what we are not permitted to do by our standard of review. We have reviewed the record thoroughly and can find no error of law. The trial court's findings and conclusions were supported by the record. Therefore, we affirm the trial court's custody order.

Finally, Father requests an award of counsel fees and costs pursuant to Rule of Appellate Procedure 2744. Father's Brief at 11-12. That rule allows for an award of counsel fees when "an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." Pa.R.A.P. 2744. Father argues that Mother's failure to follow the rules unduly delayed the appeal and was dilatory. Father's Brief at 11. While Mother's failure to label her appeal as a Fast Track case and to file a timely concise statement undoubtedly delayed the disposition, we cannot conclude that Mother did so solely to delay the outcome or that these procedural missteps constitute dilatory, obdurate or vexatious conduct. Therefore, we decline to award Father counsel fees.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/14/2015</u>